**STATE OF WEST VIRGINIA**

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **C.W., L.W., C.H., and A.W.**

**No. 19-0946** (Wood County 17-JA-299, 17-JA-300, 18-JA-1, and 18-JA-156)

# MEMORANDUM DECISION

Petitioner Father M.W., by counsel Ryan M. Ruth, appeals the Circuit Court of Wood County's September 16, 2019, order terminating his parental rights to C.W., L.W., C.H., and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Jessica E. Myers, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that he failed to successfully complete his post-adjudicatory improvement period and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition in November of 2017, alleging that petitioner's substance abuse threatened the children and that the home was inappropriate and unsanitary.[2] Prior to the petition's filing, law enforcement was dispatched to the home for a welfare check after petitioner obtained a domestic violence protective order on behalf of himself and the children against the mother of C.W., L.W., and A.W. Upon arriving, a police officer found the front porch so covered in trash that it was "difficult to walk." Once inside, the officer "observed trash on the floor of the residence, overflowing trash cans, spoiled food on the stove, sink overflowing with dirty dishes which were also filled with spoiled food, and a strong odor of urine in the air." The officer further noticed insects "flying and crawling on every surface in the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]The DHHR later filed two amended petitions to include additional children.

residence." According to the petition, the children all shared a small room that was "also littered with trash" and the smell of urine "originate[d] from the children's bedroom." Child Protective Services ("CPS") confirmed the conditions in the home and found the children to be "filthy and covered in bug bites." The CPS investigation also revealed structural issues, such as exposed wiring and a ceiling that "appeared to be falling in."

At an adjudicatory hearing in January of 2018, petitioner stipulated that he failed to provide the children with adequate housing.[3] The circuit court granted petitioner a post-adjudicatory improvement period and later granted a motion to extend the same. However, in September of 2018, the circuit court ordered petitioner to undergo a parental fitness evaluation due to his inability to correct the conditions of abuse and neglect up to that point.

At dispositional hearings in April of 2019 and July of 2019, the circuit court heard evidence that established petitioner failed to progress in regard to the services offered. Specifically, the circuit court found that petitioner was unable to successfully complete parenting classes and his "behavior resulted in termination of visits with the[] children." The evidence also established that between June 18, 2019, and July 31, 2019, petitioner missed visitations, adult life skills classes, and five drug screens. According to testimony from a service provider, the unsafe conditions in petitioner's home persisted, despite the provision of extensive and extended services. According to the circuit court,

> [t]he failure[] of . . . [petitioner] to make meaningful improvements respecting the conditions and circumstances that led to the filing of the petition are underscored by the fact that it ha[d] been twenty-one . . . months since removal of the children from the[] home and almost a year and one-half since the terms and conditions of [his] improvement period were adopted and approved.

Additionally, the psychologist who conducted petitioner's parental fitness evaluation testified that she earlier recommended, in January of 2019, that "[g]iven a history of noncompliant behavior, . . . [s]hould [petitioner] continue to submit any positive drug screens, unnecessarily cancel provided services, or miss visitation with his children, termination of parental rights should be considered." Since that time, petitioner "missed services unnecessarily and visitation had to be stopped due to the behavior of" both parents. Based on this evidence, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare. Accordingly, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated his parental rights to the children.[4] It is from the September 16, 2019, dispositional order that petitioner appeals.

---

[3]The record shows that petitioner also stipulated to the allegations in the amended petitions.

[4]The parental rights of the mother of C.W., L.W., and A.W. were terminated below. According to respondents, the permanency plan for those children is adoption together in their current foster home. The permanency plan for C.H. is to remain in the custody of his nonabusing mother.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's sole assignment of error concerns the termination of his parental rights. According to petitioner, the circuit court erred in finding that he failed to complete his improvement period and that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. He argues that those findings were incorrect based upon his testimony at the dispositional hearing that he obtained appropriate bedding for the children and that the home was cleaner than it was the last time CPS inspected it. Petitioner further asserts that his employment "made it very difficult, if not impossible, to participate [in services] as much as the Department required." Upon our review, we find no error.

We find petitioner's assertion that his employment prevented him from participating in services as extensively as required unavailing. Essentially, this is an admission by petitioner of his failure to follow through with remedial services. Further, petitioner acknowledges the requirement in West Virginia Code § 49-4-610(4)(A) that the parent "shall be responsible for the initiation and completion of all terms of the improvement period." Despite recognizing this affirmative duty on his part, petitioner fails to provide any compelling evidence that he sought to satisfy this responsibility in light of his employment, such as requesting that the DHHR permit him to participate in services at times when he was not required to work. In short, petitioner's blanket assertion that his employment prevented him from fully complying with the DHHR's remedial services below entitles him to no relief on appeal.

Further, petitioner's unsupported assertion at the final hearing that his home was "not too bad" and "a lot cleaner than it was" the last time CPS inspected is insufficient to overcome the extensive evidence below regarding his failure to correct the conditions in the home. According to testimony from a CPS employee who inspected the home in April of 2019, around the time of the first dispositional hearing, the home remained in essentially the same condition as when the children were first removed, with trash, spoiled food, and dirt so thick that the white bathtub and sink in the bathroom were "almost black." Accordingly, the DHHR satisfied its burden of proof in regard to the continuing conditions in the home, and petitioner's unsupported testimony was insufficient to rebut that evidence.

Contrary to petitioner's argument on appeal, we find no error in the circuit court's finding that he failed to successfully complete his improvement period or that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected in the near future. As set forth above, petitioner was provided services for an extended duration, yet he failed to demonstrate any improvement in the conditions giving rise to the petition. Petitioner missed multiple drug screens; was unable to complete parenting services; behaved in a manner that resulted in the cancellation of his visits with the children; and generally failed to remedy the conditions in the home. This evidences a thorough failure to follow through with rehabilitative efforts designed to reduce the conditions of abuse and neglect, which, pursuant to West Virginia Code § 49-4-604(c)(3) (2019),[5] constitutes a circumstance in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected. Further, the circuit court found that the children's welfare required termination of petitioner's parental rights, especially in light of the extended provision of services that resulted in no improvement, and we agree. Pursuant to West Virginia Code § 49-4-604(b)(6) (2019), circuit courts may terminate parental rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 16, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[5]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.